# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| **Desmond A. Pridgen**<br>**9649 Long Hill Dr.**<br>**Charlotte, N.C. 28214**<br>(Complainant)<br><br>**Plaintiff,**<br><br>V.<br><br>**Kathy Kraninger, Director**<br>**Consumer Financial Protection Bureau,**<br>**1700 G Street, N.W.**<br>**Washington, D.C., 20552,** (Agency)<br><br>**Defendant.** ) | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | RECEIVED<br>CHARLOTTE, NC<br><br>SEP 1 1 2019<br><br>Clerk, US District Court<br>Western District of NC |

Civil Action No.  3:19-cv-446-FDW

## COMPLAINT

1. Plaintiff Desmond A. Pridgen, Pro Se and without counsel at this time, bring this action against Defendant Kathy Kraninger, in her official capacity as Director of the Consumer Financial Protection Bureau, seeking relief from discrimination under the Age Discrimination in Employment Act of 1967, ("ADEA"), 29 U.S.C. § 621, *et seq*. Age (53 DOB 11/12/1959) , Race (Black), and Disability (physical). The Complainant contends that as a former federal employee (GS-14) with 18 years of fair lending and mortgage experience at HUD FHEO and 27 years of federal civil/criminal investigative experience who were more qualified than the **thirty-five (35)** successful applicants hired by the Defendant.

2. The Complainant alleged he was denied an employment opportunity with the Agency and discriminated and retaliated against in the selection of thirty-five (35) vacant positions (Consumer). The Plaintiff request that each of the thirty-five (35) vacancy positions in which the Plaintiff were denied be considered a separate discriminatory act by the Defendant.

1

### 3. JURISDICTION AND VENUE

4. This court has jurisdiction over these claims pursuant to 42 USC 1981, Title VII of the Civil Rights Act of 1964 , as amended, 42 U.S.C. 2000 et seq.,501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. 791 et seq., and the Age Discrimination Act of 1967 (ADEA), as amended, 29 /USC 621 et seq., and 28 U.S.C. § 1331 and 1343.

5. All conditions precedent to jurisdiction in this court has been satisfied. This case arises out of decisions by the Consumer Financial Protection Bureau ("CFPB") in October, 2013, to deny the plaintiffs' applications for employment for thirty-five (35) consumer response specialist positions. The plaintiff initiated informal administrative complaints of age discrimination by contacting an EEO counselor at the CFPB within 45 days of receiving notice of CFPB's rejection of their employment applications. The plaintiff filed a timely formal complaint of employment discrimination on the basis of age, race, disability, and retaliation on November 18, 2013.

6. After an investigation, the Agency provided the Complainant with a copy of the report of investigation and notice of the right to request a hearing before an EEOC Administrative Judge (AJ). Complainant timely requested a hearing. Over Complainant's objections the AJ assigned to the case granted that Agency's January 22, 2016 motion for a decision without a hearing and issued a decision on December 5, 2016. Complainant filed an appeal with the EEOC Office of Federal Operations. On February 8, 2017, pursuant to an appeal filed from the Agency's December 1, 2017 final order. The EEOC OFO issued a decision letter November 16, 2018.

7. The Plaintiff requested reconsideration of the decision. The EEOC OFO issued a Decision on the request for reconsideration dated June 7, 2019. The certificate of mailing is dated June 7, 2019.

2

8. The Plaintiff never received the mailed decision. The Plaintiff via email dated July 31, 2019 requested a update on the status of the reconsideration petition. On July 31, 2109 via email the EEOC Attorney of the Day notified the Plaintiff that decision was made dated June 7, 2019, and any timeliness issues had to be addressed with the US District Court.

9. The Plaintiff is filing this action within 90 days of receipt of CFPB's final agency decision received via email on July 31, 2019.

10. Venue is proper in this District pursuant to 28 USC 139 (b) The CFPB is headquarter in this Washington D.C. and government entity has jurisdiction throughout the United States. The unlawful discriminatory actions occurred in this District and across the United States.

## 11. PARTIES

12. Defendant Kathy Kraninger, is the Director of the CFPB. She is sued in her official capacity.

13. Defendant CFPB is an executive agency of the United States Government within the meaning of 5 usc 105. Established in Title X of the Dobb-Frank Wall Street Reform Street Reform and Consumer Protection Act, the Bureau regulates consumer financial products in and services in compliance with federal law.

14. Plaintiff Desmond A. Pridgen is race (Black), Age (53 DOB 11/12/1959), and disability (physical). The Complainant contends that as a former federal employee (GS-14) with 18 years of fair lending and mortgage experience at HUD FHEO and 27 years of federal civil (mortgage and fair lending)l/criminal (fraud and embezzlement) investigative experience with DOJ, DOL, HUD, and NRC.

## 15. FACTUAL ALLEGATIONS

16. The Complainant alleged he was denied an employment opportunity with the Agency and discriminated and retaliated against in the selection of thirty -five (35) vacant positions

Consumer Response Specialist (Investigations, Pay Plan CN-**0301**-40/52) in the Consumer Response unit, because of his race (Black), Age (53 DOB 11/12/1959), and disability (physical) (Lower Lumber stenosis, and Foot Drop). The Complainant contends that as a former federal employee (GS-14) with 18 years of fair lending and mortgage experience at HUD FHEO and 27 years of federal civil /criminal investigative experience was more qualified than most of the **thirty-five (35)** successful applicants[1] hired for the equivalent GS-9 to GS-12 Consumer Response position with the Agency and that the

17. Complainant questioned the assessment test and interview process was improperly administered by his subordinates. The Complainant request that each of the thirty-one Consumer Response vacancies be considered a separate discriminatory act by the Agency. Please note that most of the Blacks, older, and targeted/non-targeted disabled (no disabled individuals) candidates were hired after the Complainant filed the initial complaint in July 2013.

18. The Complainant questions the viability and credibly of the data[2] furnished by the Agency. The Complainant rejects the comparable evidence in ROI as it is distorted and unverified. The Complainant has concerns regarding the validity of the exhibits and comparable data provided to the EO Investigator by the Agency and Complainant without third party verification to affirm or refute the information. Consequently, even though the Plaintiff doesn't believe the EEO investigation addressed his concerns of discrimination at the CFPB. There are too many inconsistencies in the evidence provided by the Agency in the RMO affidavits. For example there were several requests for comparable data

---

[1] The numbers of vacancies have increased since the number of vacancies since the Complainant initially filed the Complaint from 25 to 31 successful applicants. (see D'Alessandro interview EEO Counselor Report pg 3 of 88). However, D'Alessandro testified that the selections were effected to increase the number of full time employees in investigations by 25. The investigator list of successful candidates have 45 individuals listed Exhibit 14, and the Agency response to interrogatory 10/29/2014 has 31 successful applicants. Please note the 7 Black candidates were hired after the Complainant filed the initial complaint on 7/12/2013. None of the 31 successful candidates has a disability and 6 are over the age of 40 based on the diagram forwarded by the Agency.

[2] The EEO investigator and the Complainant have not reviewed the successful applicants' assessment test or scores for comparable data, interview scores, interview notes, and work history information.

The Complainant has provided unequivocal evidence to affirm or refute the Complainant's allegations.
For example ROI Exhibit 17 and Discovery documents provided by the Agency had numerous inconsistencies and mistakes regarding the comparable data which was not verified because of the Agency refusal to cooperate with the EEO investigation. Further, D'Alessandro explained that several selected candidates Stella Kim and mark turner are no longer employed by CFPB. Also selectee Matthew O'Reilly has been reassigned within CFPB. (ROI Footnote page 22 of 26)

4

which were not provided to the Agency investigator or Complainant during the course of the investigation and Discovery. The Complainant has since learned of new and ongoing evidence that further corroborate a causal relationship of discrimination at CFPB's potential employees, applicants and hires.

19. Ms. Florine Williams, witness/former CFPB employee, Senior Equal Employment Specialist in the Agency's Civil Rights Office since October 2013 testified that "I want to make clear that I have devoted a large portion of my federal career to ensuring that the EEO process is fairly and professionally administered. The culture of discrimination within the CFPB is beyond compare. I am amazed at the CFPB's continued distortion of the facts and the acceptance by others of the distortions as fact. I am also amazed at the continued acceptance of non and half-hearted efforts made by the CFPB to seriously address the various forms of bias that have been brought to this Subcommittee's attention. It is my sincerest desire that my responses will reaffirm that little progress has been made by OMWI, OHC, and OCR to address and resolve the blatant discrimination within the CFPB."

20. The Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank Act) established the CFPB as an executive agency, as defined in title 5, section 105, of the United States Code, and as a bureau within, yet autonomous from, the Federal Reserve System. As such, the CFPB follows certain employment provisions of title 5 of the United States Code and the implementing regulations within title 5 of the Code of Federal Regulations, such as those related to hiring, promotions, and employee satisfaction surveys. The CFPB must also adhere to the EEO provisions of title 29 and title 42 of the United States Code and the implementing regulations within title 29 of the Code of Federal Regulations.

21. The CFPB had a significant amount of Discrimination and retaliation allegations filed in 2013 and 2014 specifically the Consumer Response Unit managed by Section Chief Dane D'Alessandro created a discriminatory and "toxic work en vironment" which effected applicants, new hires and its employees. Mr. D'Alessandro identifiedScott Pluta, Assistant Director of Consumer Response Unit. He reviewed his selection with him and he didn't make any changes. Scott Pluta was charged in numerous EEO and grievance complainants for creating a toxic and hostile work environment within the Consumer

5

Response Unit. Mr. Pluta was essentially removed from his position. The Consumer Response unit was the subject of several Housing Finance Committee Service hearings titled Examining Allegations of Discrimination and Retaliation at CFPB from 2013 – 2015.

22. The Bureau has and is engaged in a pattern and practice of race, disability and age discrimination against minority employees and maintains policies and practices that have a disparate impact on new hires and racial minorities. CFPB maintains stereotypical views about the skills, abilities, and potential of its racial minority employees that form the basis of its policies and practices and result in the segregation and differential treatment of minorities, age, and disability.

23. During Plaintiffs' attempts of employment, CFPB has engaged in a pattern and practice of unlawful conduct toward its hiring practice and treatment of minority employees, age, and disability including but not limited to the following:

24.

a)several external investigations and congressional investigations that the Agency discriminated against their employees throughout the Agency and most specifically in the Consumer Response Division of CFPB concluding that new hires were discriminated against in their hiring practices and after a few were in fact to their detriment.

b) excluding minorities from training opportunities that are regularly offered to white employees;

c) excluding minorities, age, and disabled from details, projects and other assignments that are regularly offered to white employees;

d) employing bureau-wide performance evaluation policies that disproportionately result in high performance ratings for employees and average (or lower) performance ratings for minority employees;

6

e) employing a quota system to measure employee productivity that weighs investigation assignments without regard to complexity while assigning and minorities and women the majority of longer-term, more complex investigations;

f) failing to credit minorities for their experience on the same basis as white employees and failing to consider minorities and hire the Plaintiff cause of race, disability, age, and reprisal

25. **A Congressional Investigation and Independent Studies Find Discrimination and Retaliation at the Bureau**

26. The Bureau's performance management policies and practices have already been found to have a disparate impact on minorities, disabled, age and reprisal in their hiring process. The U.S. House of Representatives Committee on Financial Services held hearings on April 2 and May 21, 2014, to investigate "Allegations of Discrimination and Retaliation within the Consumer Financial Protection Bureau." The transcripts and exhibits of those hearings demonstrate a widespread culture of discrimination and retaliation at the Agency.

27. On April 2, 2014, Bureau's Consumer Response attorney, Angela Martin, testified to the "culture of retaliation and intimidation that silences employees from exposing wrongdoing." She also testified that "the white males in power" at Consumer Response give themselves the highest performance evaluation ratings, ensuring for themselves the top raises and bonuses. Meanwhile, minority employees make up what is called "the plantation." They do the work of the Bureau but receive lower performance ratings and fall farther behind in compensation, creating a racial pay gap that continues to widen.

28. The Bureau's internal analysis confirmed that Caucasian Bureau employees were significantly more likely than minorities to receive the highest performance rating and significantly less likely to receive the lower ratings. For example, a white employee was twice as likely as an African American or Hispanic to receive the top rating in 2013.

29. Independent investigator Misty Raucci testified to her finding that "the general

environment in Consumer Response is one of exclusion, retaliation, discrimination, demoralization, and other offensive working conditions which constitute a toxic workplace for many of its employees." Indeed, while investigating Martin's case, Raucci was inundated by calls from other employees, and she "became a veritable hotline for employees of the Agency who called [her] to discuss their own maltreatment at the Bureau."

30. At the May 21, 2014 Congressional hearing, it become "apparent that the Agency was aware of the racial disparities in key metrics" since at least September 2013, when the Bureau received the study it had commissioned from Deloitte Consulting. The Deloitte study found "sharp racial disparities in performance ratings, pay, **hiring practices**, and other areas." It also found "that the minority population is overrepresented in the lower pay bands and underrepresented in the higher pay bands, which is masked in the Bureau-level data." Nine months after receiving the Deloitte study, the Bureau finally conceded that its performance rating practices had caused "widespread disparities" that were "statistically significant . . . in many categories . . ., including race/ethnicity [and] age[.]"

**31. The OIG Report Confirms Systemic Discrimination in Pay, Performance Ratings and hiring practices**

32. On March 4, 2015, the Office of Inspector General ("OIG") issued a report entitled "The Agency Can Enhance Its Diversity and Inclusion Efforts." The impetus for the OIG report was a March 24, 2014, letter from Congress requesting an investigation "to detect whether any personnel practices and policies have created an unfair or discriminatory workplace for minorities and women employed at the CFPB." The letter noted.

33. We are concerned about recent allegations that managers at the [Agency] have shown *a pattern of ranking white employees distinctly better than minority employees in performance reviews*, as reported in a recent American Banker

article entitled, "Agency Staff Evaluations Show Sharp Racial Disparities," on March 6, 2014.

34. In response, the OIG commissioned DCI Consulting Group to perform a statistical analysis of the Bureau's 2012 and 2013 performance ratings. As the consultants explained, the Bureau's performance rating system was key to understanding pay disparities because it serves as the basis for determining "pay-for-performance" amounts provided to employees. These increases take two forms: *merit increases*, which affect employees' base salary and growth over time, and *supplemental lump sum payments*. Both of these annual compensation programs are in part dependent upon an employee's performance rating.

35. The consultants found that: Whites were rated significantly higher than African Americans in 2012 and 2013…Additionally, Whites were rated significantly higher than Hispanics in 2013[.] The OIG determined that these racial disparities became more widespread within the Bureau in 2013 than they had been the year before.

36. The OIG also found that white employees make up a greater percentage of higher paid employees. For each of the three years studied, "White employees as a percentage of total employees within each pay grade series increased as the pay increased." In 2013, for example, although white employees made up only 52 percent of the lower paid workforce, they made up almost 76 percent of the higher paid workforce.

37. These findings were consistent with the Bureau's own internal analysis, which found statistically significant disparities in performance ratings based on race and ethnicity, among other protected factors. Notably, in four of the six divisions within the Bureau, "White employees received higher performance ratings, on average, than Black/African American employees," and this same disparity for Hispanics existed in three of the six divisions. These disparities were not the result of happenstance. Even after receiving the OIG Report, the Bureau did not require its managers and supervisors to attend diversity and inclusion training.

38. CFPB discriminated against the plaintiffs on the basis of age when it rejected their applications for employment. As a direct and proximate result of the CFPB's actions, each

39. Plaintiff has suffered and will continue to suffer professional injury, monetary damage, humiliation and other emotional pain and suffering, and each has incurred and will continue to incur legal and related expenses.

**Table C-1: Permanent Employees, by Gender, Race/Ethnicity, and Age, FY 2011–FY 2013, and Demographic Breakdown of ACS Data, 2006–2010[a]**

| Permanent workforce demographics | FY 2011 | | FY 2012 | | FY 2013 | | 2006–2010 ACS data |
|---|---|---|---|---|---|---|---|
| | Number | % of total workforce | Number | % of total workforce | Number | % of total workforce | % of total |
| Total permanent workforce | 666 | 100.00 | 988 | 100.00 | 1,323 | 100.00 | 100.00 |
| *Gender* | | | | | | | |
| Male | 354 | 53.15 | 498 | 50.40 | 703 | 53.14 | 52.79 |
| Female | 312 | 46.85 | 490 | 49.60 | 620 | 46.86 | 47.21 |
| *Race/Ethnicity* | | | | | | | |
| White | 438 | 65.77 | 651 | 65.89 | 876 | 66.21 | 67.05 |
| Black/African American | 133 | 19.97 | 178 | 18.02 | 227 | 17.16 | 11.34 |
| Asian | 49 | 7.36 | 93 | 9.41 | 129 | 9.75 | 4.82 |
| Hispanic/Latino | 31 | 4.65 | 46 | 4.66 | 71 | 5.37 | 14.58 |
| Other | 15 | 2.25 | 20 | 2.02 | 20 | 1.51 | 2.21 |
| *Age* | | | | | | | |
| Under 40 | 332 | 49.85 | 501 | 50.71 | 694 | 52.46 | N/A |
| 40 or older | 334 | 50.15 | 487 | 49.29 | 629 | 47.54 | N/A |

*Source:* OIG analysis of CFPB-provided information and the Census Bureau's ACS data.

*Note:* Percentages may not total 100 due to rounding.

**Table D-4: Applicants Hired, by Gender and Race/Ethnicity, FY 2011–FY 2013**

| Hired | FY 2011 | | FY 2012 | | FY 2013 | |
|---|---|---|---|---|---|---|
| | Number | % of total hired | Number | % of total hired | Number | % of total hired |
| **Total hired** | 166 | 100.00 | 378 | 100.00 | 446 | 100.00 |
| Gender | | | | | | |
| Male | 99 | 59.64 | 181 | 47.88 | 241 | 54.04 |
| Female | 63 | 37.95 | 180 | 47.62 | 190 | 42.60 |
| Unknown | 4 | 2.41 | 17 | 4.50 | 15 | 3.36 |
| Race/Ethnicity | | | | | | |
| White | 89 | 53.61 | 211 | 55.82 | 252 | 56.50 |
| Black/African American | 45 | 27.11 | 76 | 20.11 | 78 | 17.49 |
| Hispanic/Latino | 9 | 5.42 | 20 | 5.29 | 36 | 8.07 |
| Asian | 10 | 6.02 | 38 | 10.05 | 45 | 10.09 |
| Other | 13 | 7.83 | 33 | 8.73 | 35 | 7.85 |

Source: OIG analysis based on CFPB-provided data.

## 2014 Office of Minority and Women Inclusion Annual Report to Congress

In 2014 the CFPB continued to hire staff in order to expand operations to achieve its immediate and long-term priorities. As of year-end 2014, the CFPB had a total of 1,414 employees. Accounting for attrition, this number represents an increase of 60 employees from year-end 2013.

11

**FIGURE 2:**    CFPB NON-HISPANIC WORKFORCE BY RACE FOR CALENDAR YEAR 2014



All other*
3%

Asian
10%

Black
18%

White
69%

n = 1,339

*Includes American Indian/Alaska Native (0.4%), Native Hawaiian/Pacific Islander (0.01%), two or more Races (2.6%).

Figure 2 shows the CFPB non-Hispanic workforce by race, and the associated percentages for the non-Hispanic workforce subset. Of the 1,414 employees at year end of 2014, 65% self-identified as White, 18% as Black/African-American, 9% as Asian American, and 3% as some other racial group or belonging to two or more racial groups.

Case 3:19-cv-00446-DSC    Document 1    Filed 09/11/19    Page 12 of 19



**FIGURE 20:** NON-HISPANIC NEW HIRES BY RACE FOR CALENDAR YEAR 2014

All other*
2%

Asian
11%

Black
18%

White
69%

n = 250

**No Fear Act Annual Report for FY 2014**

**Equal Employment Opportunity (EEO) program status report FY2013**

- ☐ White males (31) comprised 34.07% of the hires
- ☐ White females (24) comprised 26.37% of the hires
- ☐ Black males (5) comprised 5.49% of the hires
- ☐ Black females (11) comprised d 12.09% of the hires
- ☐ Hispanic males (5) comprised 5.49% of the hires
- ☐ Hispanic females (2) comprised 2.20% of the hires
- ☐ Asian males (7) comprised 7.69% of the hires
- ☐ Asian females (5) comprised 5.59% of the hires

13

**2013 Equal Opportunity program report**

| | WM | WF | BM | BF | HM | HF | AM | AF | NH/PI M | NH/PI F | AI/AN M | AI/AN F | 2+M | 2+F |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| # | 113 | 74 | 20 | 28 | 16 | 9 | 19 | 13 | 0 | 0 | 1 | 0 | 0 | 0 |
| % | 38.6% | 25.2% | 6.8% | 9.6% | 5.5% | 3.0% | 6.5% | 4.4% | 0.0% | 0.0% | 0.3% | 0.0% | 0.0% | 0.0% |
| CLF | 38.3% | 34.0% | 5.5% | 6.5% | 5.2% | 4.8% | 2.0% | 1.9% | 0.1% | 0.1% | 0.6% | 0.5% | 0.3% | 0.3% |

## 6.6.2 Misc. administration (0301)

During FY13, CFPB hired 91 employees in the Miscellaneous Administration Program series) occupations, comprised of 53.85% (49) males and 46.15% (42) females:

- White males (31) comprised 34.07% of the hires

- White females (24) comprised 26.37% of the hires

- Black males (5) comprised 5.49% of the hires

- Black females (11) comprised d 12.09% of the hires

- Hispanic males (5) comprised 5.49% of the hires

- Hispanic females (2) comprised 2.20% of the hires

- Asian males (7) comprised 7.69% of the hires

- Asian females (5) comprised 5.59% of the hires



TABLE 18: NEW MISC. ADMINISTRATORS BY GROUPING

| | WM | WF | BM | BF | HM | HF | AM | AF | NH/PI M | NH/PI F | AI/AN M | AI/AN F | 2+M | 2+F |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| # | 31 | 24 | 5 | 11 | 5 | 2 | 7 | 5 | 0 | 0 | 0 | 0 | 1 | 0 |
| % | 34.1% | 26.4% | 5.5% | 12.0% | 5.5% | 2.2% | 7.7% | 5.5% | 0.0% | 0.0% | 0.0% | 0.0% | 1.1% | 0.0% |
| CLF | 24.1% | 33.8% | 7.2% | 22.1% | 2.6% | 2.9% | 1.6% | 3.0% | 0.0% | 0.1% | 0.2% | 0.3% | 1.0% | 1.1% |

14

**Total workforce** 1343
**Reportable disability** 107

| TABLE 35: CHANGES IN DISABLED WORKFORCE | | | | | | |
|---|---|---|---|---|---|
| | # on 9/30/2012 | % on 9/30/2012 | # on 9/30/2013 | % on 9/30/2013 | Net Change # | Net Change % |
| Total workforce | 988 | 100% | 1343 | 100% | 355 | 35.93% |
| Reportable disability | 83 | 8.40% | 107 | 7.97% | 24 | 28.92% |
| Targeted disability | 6 | 0.61% | 9 | 0.67% | 3 | 50% |

TABLE 36: APPLICATIONS AND SELECTIONS OF PERSONS WITH TARGETED DISABILITIES

| | |
|---|---|
| Total number of applications from persons with targeted disabilities during the reporting period | 910 |
| Total number of selections of individuals with targeted disabilities during the reporting period | 6 |

## CAUSE OF ACTION

(Age Discrimination)

Plaintiff incorporate herein by reference each allegation previously stated.

By its actions and those of its agents, as set forth above, CFPB deliberately and intentionally discriminated against each Plaintiff because of age, in violation of the ADEA, 29 U.S.C. § 621, *et seq.*

15

(Race)

Plaintiff incorporate herein by reference each allegation previously stated.

By its actions and those of its agents, as set forth above, CFPB deliberately and intentionally discriminated against each Plaintiff because of race, in violation of the 42 U.S.C. 2000e – 2000e-16 (Title VII) .

(Disability)

Plaintiff incorporate herein by reference each allegation previously stated.

By its actions and those of its agents, as set forth above, CFPB deliberately and intentionally discriminated against each Plaintiff because of disability, in violation of the 42 U.S.C. 12112 (Title VII-ADA).

(Reprisal)

Plaintiff incorporate herein by reference each allegation previously stated.

By its actions and those of its agents, as set forth above, CFPB deliberately and intentionally discriminated against each Plaintiff because of age, in violation of the 42 U.S.C. 1981 (Title VII) .

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Desmond A. Pridgen respectfully request that this Court enter judgment on the Plaintiffs behalf against Defendant, and order all relief to which they are entitled pursuant to the ADEA, 29 U.S.C. § 621, the Back Pay Act, 5 U.S.C. § 5596, and the Equal Access to Justice Act, 28 U.S.C. § 2412, as follows:

16

a. find and declare that CFPB discriminated against Plaintiffs on the basis of age in violation of 29 U.S.C. § 621, *et seq.*;

b. order that the Plaintiff be instated to employment with CFPB or, in the alternative, awarded monetary compensation equivalent to front pay;

c. grant all other injunctive relief necessary to remedy and correct CFPB's discriminatory actions;

d. award Plaintiff the equivalent of back pay, along with the value of any benefits, plus interest, which he or she would have earned and received but for CFPB's discrimination;

e. award each Plaintiff costs and disbursements of this action, including reasonable attorneys' fees; and

f. grant such other and further relief as the Court deems equitable, just and proper.

g. Declare that the CFPB's acts, conduct, policies and practices are unlawful and violate the federal statutes identified in the Counts alleged against them above;

h. Declare that CFPB engages in a pattern and practice of racial discrimination against racial minorities, disabled and age, and employs policies and practices that have an unlawful disparate impact on racial minorities, disabled, age and reprisal in their hiring prctices;

i. Order that the CFPB stop discriminating and retaliating against racial minorities, disabled, age and reprisal, and cease implementing policies and practices that have a disparate impact on racial minorities, disabled, and reprisal in their hiring practices.

j. Order Plaintiff and all others similarly situated new hires be reinstated to their appropriate positions,  promotions,  and seniority, and otherwise make Plaintiff whole;

g. Award Plaintiffs and all others similarly situated the value of all compensation packages and benefits lost and that he will lose in the future as a result of CFPB's unlawful conduct;

h. Award Plaintiff and all others similarly situated compensatory and punitive damages and liquidated damages;

i. Award Plaintiff and all others similarly situated prejudgment interest, attorneys' fees, and costs, as provided by law; and

j. Award Plaintiff and make whole equitable, Injunctive, and legal relief as this Court deems just and proper to end the discrimination and fairly compensate Plaintiffs and those similarly situated.

## DEMAND FOR A JURY TRIAL

Plaintiffs hereby demand a jury trial as provided for by Rule 38(a) of the Federal Rules of Civil Procedure.

Respectfully Submitted,

Desmond A. Pridgen, Pro Se
9649 Long Hill Dr.
Charlotte, N.C. 28214
dapridge@gmail.com

# 2016-2019 CFPB base pay table

| Pay grade | GS equivalent | Min | Mid | Max |
|-----------|---------------|-----|-----|-----|
| 10 | GS-1 & 2 | $23,249 | $29,314 | $35,378 |
| 21 | GS-3 | $28,140 | $33,046 | $37,951 |
| 22 | GS-4 | $30,876 | $38,181 | $45,486 |
| 31 | GS-5 | $38,627 | $43,114 | $47,600 |
| 32 | GS-6 | $38,686 | $46,405 | $54,124 |
| 33 | GS-7 | $43,464 | $54,583 | $65,702 |
| 41 | GS-8 | $49,162 | $59,270 | $69,377 |
| 42 | GS-9 | $54,859 | $71,032 | $87,204 |
| 43 | GS-10 | $63,037 | $78,796 | $94,555 |
| 30 | GS-5 to 7 | $38,627 | $52,165 | $65,702 |
| 40 | GS-8 to 10 | $49,162 | $71,859 | $94,555 |
| 51 | GS-11 | $66,871 | $81,917 | $96,962 |
| 52 | GS-12 | $78,107 | $95,681 | $113,255 |
| 53 | GS-13 | $90,053 | $113,501 | $136,949 |
| 60 | GS-14 | $94,647 | $133,609 | $172,570 |
| 71 | GS-15 | $111,209 | $158,974 | $206,738 |
| 81 | SES | $147,024 | $181,483 | $215,942 |
| 82 | SES | $169,997 | $198,713 | $227,428 |
| 90 | SES | $181,416 | $220,458 | $259,500 |

Certain geographic areas receive an additional locality adjustment. The locality rate for employees in Washington, D.C. (headquarters) is 18 percent. Employees in pay grade CN-90 do not receive a locality adjustment.